*ee*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LOUIS W. MILLER and                          )
RICHARD ROYALS,                              )
                                             )
            Plaintiffs,                      )
                                             )    Case No. 03 C 7756
vs.                                          )    Judge Sidney I. Schenkier
                                             )
AMERICAN AIRLINES, INC.,                     )
                                             )
                                             )
            Defendant.                       )

### MEMORANDUM OPINION AND ORDER[1]

Plaintiffs filed this action in October 2003 alleging violations of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.* In their complaint, Louis Miller and

Richard J. Royals ("plaintiffs") alleged that in May 2002, the defendant, American Airlines, Inc.,

("American") eliminated their jobs as flight engineers ("FEs"). At that time, plaintiffs, who were

ages 70 and 74, claimed that American then discriminated against them on the basis of their age by

refusing to provide them with jobs of comparable salary to that which they had received as FEs, an

entitlement that plaintiffs claimed was provided by a collective bargaining agreement: in particular,

Supplement U of the Tripartite Agreement.

The Court concluded that plaintiffs' claim raised a question of interpretation of the collective

bargaining agreement that fell within the exclusive arbitral process created by the Railway Labor Act

("RLA"), 45 U.S.C. § 151, *et seq.*: specifically, whether the collective bargaining agreement

---

[1]On April 20, 2004, by the parties' consent, the Executive Committee reassigned this case to this Court, pursuant to 28 U.S.C. § 636(c) and Northern District of Illinois Local Rule 73.1(b), to conduct any and all proceedings in this case and to enter final judgment (doc. # 10-12).

required American to provide jobs at comparable salaries to FEs whose positions were eliminated, if the FEs had already reached the age of sixty-five years old. This question, in turn, required interpretation of the phrase "normal . . . retirement date" as used in Supplement U, but originates in the parties' pension plan as "normal retirement age" ("NRA").

Thus, on September 28, 2004, the Court stayed this case while the term in Supplement U of the Tripartite Agreement was interpreted by an arbitrator pursuant to the mandatory arbitration provision of the RLA. *See Miller v. American Airlines, Inc.*, No. 03 C 7756, 2004 WL 2203425, 175 L.R.R.M. (BNA) 3348 (N.D. Ill. Sept 28, 2004). On June 12, 2006, the arbitrator issued a decision interpreting "normal retirement date" and NRA to mean age sixty-five, finding that the collective bargaining agreement did not guarantee positions of comparable pay to plaintiffs when their FE positions were eliminated after they reached the age of sixty-five.

In response to the arbitrator's decision, American has moved to dismiss (doc. # 48-1), or for summary judgment (doc. # 48-2). The parties have fully briefed the motion, and the Court heard oral argument on December 6, 2006. At that time, the Court invited the further submission of authority directed to one of the legal issues raised by American. On December 13, 2006, American submitted additional authority; plaintiffs declined to do so.

We have now considered the arguments and authorities of the parties, as well as the summary judgment factual record. For the reasons that follow, we deny the motion to dismiss (doc. # 48-1), but grant the motion for summary judgment (doc. # 48-2).

**I.**

We begin with the legal standards that govern summary judgment motions, which are well-established. Summary judgment is proper if the record shows that there is no genuine issue as to any

2

material fact, and that the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). With regard to factual issues, a genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. In deciding a motion for summary judgment, the Court must view all evidence in the light most favorable to the nonmoving party, and must draw all reasonable inferences in the nonmovant's favor. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990).

When a material fact or a set of facts yields competing but reasonable inferences then there is a genuine issue that precludes summary judgment. The non-moving party's burden is to identify facts that are both material and genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To be material, a fact must be able to affect the outcome under the substantive law governing the motion. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 595-99 (7th Cir. 2000). A "genuine issue" exists if a reasonable trier of fact could find in favor of the non-moving party. *Id.* at 599. To establish a genuine issue, the party opposing the motion for summary judgment must serve and file, pursuant to Local Rule 56.1, a concise statement outlining the material facts that require denial of summary judgment, supported by citations to the evidentiary materials that support those denials (*e.g.*, affidavits, depositions, answers to interrogatories, admissions etc.). Fed. R. Civ. P. 56(c). Although the party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact, *Celotex*, 477 U.S. at 323, the non-moving party cannot rely upon the pleadings alone, but must use the evidentiary tools outlined above to identify the material facts that show there is a genuine issue for trial. *Id.* at 324; *Insolia*, 216 F.3d at 598.

3

Under our local rules, a party opposing summary judgment who fails to offer evidence to rebut a statement of undisputed material fact set forth by the movant does so at his peril: "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3)(C), Local Rules of the United States District Court for the Northern District of Illinois. Our appeals court has repeatedly upheld the application of these rules, as appropriate and necessary tools of case management. *Koszola v. Bd. of Educ. of the City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) ("[w]e have emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment").

## II.

The undisputed material facts that support entry of summary judgment in defendant's favor are as follows and are taken from the parties' Local Rule 56.1 Statements of Material Fact (hereinafter "Rule 56.1 St. ¶ ___").

The plaintiffs are Louis W. Miller and Richard J. Royals. In 1952 and 1955, Messrs. Miller and Royals, respectively, were each employed by American Airlines as FEs who occupied the "third seat" of propeller-driven aircraft (AA's 56.1 St. ¶¶ 1-2, 6). Prior to the introduction of commercial jet aircraft, FEs were hired from mechanical or maintenance backgrounds (AA's 56.1 St. ¶ 6); there was no requirement that FEs be pilot-qualified (*Id.* ¶ 6). The plaintiffs were hired from these backgrounds into the FE positions (AA's 56.1 St. ¶ 9, citing Ex. 6, Burdette Decl. ¶ 13). The plaintiffs remained in the FE positions from the date of their hire until the date plaintiffs retired (AA's 56.1 St. ¶ 21).

4

In 1958, President Dwight Eisenhower initiated a study which resulted in a recommendation that third-seat crew members on turbo jet aircraft become pilot-qualified (AA's 56.1 St. ¶ 7). Consequently, American and other airlines began to hire pilots to fill the third-seat position. However, in the 1960s, a jurisdictional dispute ensued between unions representing pilots (the APA) and the FEs (the FEIA) (AA's 56.1 St. ¶ 8). That dispute was resolved when American, the APA and the FEIA entered into a "Tripartite Agreement," which was executed on December 11, 1964 (AA's 56.1 St. ¶ 8; Tripartite Agreement, Ex. 5). As part of the Agreement, FEs, including the plaintiffs, were "grandfathered" into their FE positions; thus, even FEs who were not pilots could remain employed as FEs in the third-seat of the aircraft until they retired (AA's 56.1 St. ¶ 9).

On August 12, 1983, American, the APA and the FEIA negotiated a supplement to the Tripartite Agreement known to the parties as "Supplement U" (AA's 56.1 St. ¶¶ 10-11). Supplement U was negotiated due to concerns that advanced aviation technology would eliminate the need for the FE positions prior to the time when some FEs would vest fully in their pensions under the Retirement Benefit Plan of American Airlines, Inc. For Flight Engineers (the "Pension Plan") (*Id.*).

Supplement U provides:

In the event a surplus of flight engineers exists, each flight engineer so affected, who is qualified or trainable, will be guaranteed placement within the Company in a position not covered by the FEIA Collective Bargaining Agreement. If not qualified, such employee shall be afforded training to enable satisfactory performance in the job in which placed. Such flight engineer must perform the duties in accordance with his new work assignments and schedules as required by the job in which he is placed.

At the time of placement, the employee's monthly salary will be fixed based on the average of his earnings for the previous twelve (12) months as a flight engineer. If the employee's average monthly earnings as a flight engineer exceed the total monthly compensation actually earned in his new job, the employee will be paid such flight engineer's guaranteed monthly earnings. Such guarantee will be in effect until

5

his *normal flight engineer retirement date* and, thereafter, his salary will be governed by the compensation plan applicable to the new position.

(AA's 56.1 ¶ 11, Ex. 5) (emphasis added).

The Pension Plan defines NRA – "normal retirement age" – as age sixty-five (AA's 56.1 St. ¶ 20). Under the terms of the Pension Plan, NRA is when an employee may elect to retire and to take his or her full pension (AA's 56.1 St. ¶ 14). An employee's full pension amount is based on his or her "Final Average Compensations." The Pension Plan defines "Final Average Compensation" "as of any date, the arithmetical average of a Member's annual compensation for the sixty (60) consecutive months out of the one hundred twenty (120) consecutive calendar months of the Member's Credited Service net preceding the date of the Member's termination of employment as an Eligible Employee (including the month in which such date falls) which produce the highest twelve (12) consecutive month average" (AA's 56.1 St. ¶ 13).

The purpose of the salary protection provided in Supplement U was to ensure that FEs would be able to continue to receive the FE rate of pay until they reach NRA, even if the FE jobs were eliminated prior to that time and the FEs shifted to positions that ordinarily would pay at a lower rate. By providing this salary protection, Supplement U ensured that an FE's Pension that he was entitled to receive upon reaching normal retirement age would be based on the highest salary earned as an FE (AA's 56.1 St. ¶ 12).[2]

Between 1983 and May 2002, the salary guarantee of Supplement U was never invoked: no FE ever transferred to a new job, nor did they seek or receive a comparable salary to that earned as an FE. (AA's 56.1 St. ¶¶ 16, 29). In May 2002, American grounded the last remaining three-seat

---

[2]Plaintiffs' response purported neither to admit nor deny their fact statement. As we explain below, this response constitutes an admission of American's statement for purposes of this summary judgment motion.

6

craft in its fleet (AA's 56.1 St. ¶ 17). At that time, only three FEs were employed by American: the two plaintiffs and one other individual who is not part of this case. All three FEs had reached NRA and had vested fully in their pensions (AA's 56.1 St. ¶ 17).

After notifying plaintiffs that they would no longer work in the FE position, American offered them the option of retiring (with full pension), or to remain employed with American in alternative positions as a "Staff Assistants" in the publications department located in Dallas, Texas (AA's 56.1 St. ⁕ 18; Pls.' 56.1(b) Add'l Facts ¶ 5). The staff assistant position did not carry with it a salary comparable to the pay that plaintiffs had been earning in their positions as FEs (Pls.' 56.1(b) Add'l Facts ¶¶ 6-8). The Staff Assistant positions were the only positions offered to the plaintiffs (Pls.' 56.1(b) Add'l Facts ¶ 11). Plaintiffs declined the offer of alternative positions; they instead elected to retire and to exercise their right under the Pension Plan to take lump sum payouts (AA's 56.1 St. ⁕ 2).

In January 2003, plaintiffs filed EEOC Charges, which form the predicate to this lawsuit (AA's 56.1 St. ¶ 22). In their Charges, both plaintiffs alleged that the Tripartite Agreement guaranteed them another position of comparable salary when their positions were eliminated. Plaintiff Miller alleged specifically: "I was not offered a position with a comparable salary as required by the Tripartite Agreement" (AA's 56.1 St., Ex. 6E (Miller Charge)). Plaintiff Royals made the identical allegation: "I was not offered a position with a comparable salary as required by the Tripartite Agreement" (Id. (Royals Charge)). Plaintiffs both alleged that this deprivation of a contractual right to a new position with comparable salary constituted discrimination based on their age (AA's 56.1 St., Ex. 6E). Plaintiffs' EEOC charges did not claim that it would constitute age discrimination if Supplement U itself drew a distinction between FEs who lost their FE jobs when

7

they were younger than sixty-five years old and those who lost their FE jobs after they turned sixty-five years old.

American denied plaintiffs' EEOC charges of age discrimination, on two grounds. *First*, American argued that such a dispute involved disagreement over the proper interpretation of the Tripartite Agreement and what was required by its terms, a disagreement that had to be resolved under the RLA. Thus, American argued that plaintiffs' EEOC charges were preempted (AA's 56.1 St. ¶ 23; Ex. F). *Second*, American argued that, in any event, Supplement U did not contractually obligate American to provide plaintiffs with new positions at comparable pay, since plaintiffs already had passed the normal flight engineer retirement date of sixty-five years old. Thus, American argued that it did not discriminatorily deprive plaintiffs of a right they otherwise were entitled to receive under Supplement U (*Id.*). American's EEOC response did not address the question of whether Supplement U would violate the ADEA by distinguishing between FEs who reached the age of 65 years old and those who had not.

The EEOC made no determination of plaintiffs' charges, and issued plaintiffs their right to sue letters. Thereafter, on October 31, 2003, plaintiffs timely filed this lawsuit. In their complaint, plaintiffs alleged that American "promised the Plaintiff[s] a position which provided equal compensation" (AA's 56.1 St. ¶ 24). In response to American's Requests to Admit, both plaintiffs admitted that this allegation was based on their EEOC charge that the Tripartite Agreement required American to provide them a "position of comparable salary" (AA's 56.1 St. ¶ 25). At all times throughout their Charges and during the course of this lawsuit (at least, until the arbitral ruling), plaintiffs alleged that they were entitled, "as required by" or "as guaranteed by" Supplement U of the Tripartite Agreement, to receive a position of comparable salary/equal compensation when

8

American grounded its three-seat craft and their FE positions were eliminated in 2002 (AA's 56.1 St. ¶ 28). Moreover, at all relevant times, American has disputed plaintiffs' interpretation of Supplement U of the Tripartite Agreement and has interpreted that provision as not requiring it to provide plaintiffs with a position of comparable salary/equal compensation (AA's 56.1 St. ¶ 28).

The arbitration proceeding contemplated by the Court's September 29, 2004 ruling took place on March 14, 2006. The arbitrator considered the following two issues: (a) "Was a grievance timely filed protesting the Company's refusal to offer employment to the grievant[s] at salaries comparable to those they received as flight engineers?" and (b) "Was the Company, upon the elimination of the flight engineer position, obligated by Supplement U to offer the grievants alternative employment at salaries comparable to those they had received a[s] flight engineers?" (AA's 56. 1 St. ¶ 31; Ex. 12, at 2). In his June 12, 2006 decision, the arbitrator answered both questions in the negative and denied plaintiffs' grievance (AA's 56.1 St. ¶ 32). With regard to the meaning of Supplemental U, the arbitrator held that "[b]oth the language of Supplement U and the testimony regarding the drafters' intent are persuasive that the right to continued employment at flight engineer pay terminates at age 65" (AA's 56.1 St. ¶ 33; Ex. 12 at 9 n.6). The arbitrator further noted that "absent Supplement U, there would be no basis for a claim that the Company was required to provide flight engineers with alternative employment at flight engineer pay when there was no longer employment in the flight engineer classification" (AA's 56.1 St. ¶ 34; Ex. 12 at 8).

## III.

American asserts three grounds in support its of motion to dismiss or for summary judgment. *First,* American argues that the arbitrator's decision conclusively has determined that Supplement U did not contractually guarantee plaintiffs a new job at comparable pay to what they received as

9

FEs, thus undermining the premise of their age discrimination claim – that American deprived them of a contractual right on the basis of age. As a result, American argues that the complaint should be dismissed for lack of subject matter jurisdiction (as the Court may not revisit the arbitrator's interpretation of Supplement U), or that summary judgment should be granted (on the ground that the undisputed fact of the meaning of Supplemental U defeats plaintiffs' claim).

*Second*, American argues that plaintiffs may not avoid that result by recasting their claim in light of the arbitrator's ruling. Plaintiffs now seek to base their claim not on the premise that Supplement U entitled them to a new position at comparable pay, but rather on the proposition that it is discriminatory on its face because Supplement U affords that protection to those under sixty-five years old but not to those who, like plaintiffs, have reached the age of sixty-five. American offers a variety of arguments to contend that any such claim would be procedurally barred.

*Third*, American argues that, in any event, the new claim of age discrimination that plaintiffs seek to advance fails on the merits. American argues that the undisputed facts show that the distinction in Supplement U between those who have reached age sixty-five and those who have not was motivated by the legitimate goal of protecting and maximizing employee pensions, and not by the illegitimate purpose of age discrimination. Thus, says American, on the merits Supplement U passes muster under *Hazen Paper v. Biggins*, 507 U.S. 604 (1993).

A.

American argues that, in light of the arbitrator's ruling, we lack jurisdiction over the claims plaintiffs have consistently advanced: that Supplement U guaranteed them jobs at pay comparable to their FE pay, and that American deprived them of that contractual right on the basis of age.

10

Alternatively, American argues that it is entitled to summary judgment on the merits of that claim. We reject American's jurisdictional argument, but agree that summary judgment is appropriate.

**1.**

With respect to the threshold issue of subject matter jurisdiction, American argues that plaintiffs' ADEA claims are now "precluded" by the arbitrator's interpretation of NRA in Supplement U. Specifically, based on the arbitrator's decision that the term "NRA" means "age sixty-five," defendants argue that the plaintiffs no longer have a contractual right to claim that they should have received comparable positions and pay once the FE positions were eliminated, because both plaintiffs were over sixty-five years of age when that event occurred (AA's Mem. at 6-8). Thus, argues American, it cannot be held liable for denying plaintiffs this benefit based on age, and this Court lacks subject matter jurisdiction over the plaintiffs' ADEA claims because the arbitrator's ruling conclusively resolved them (*Id.* at 7).

The Court disagrees. The arbitrator's decision interpreting Supplement U was required under the RLA, so that we would avoid "judicial incursion into what the RLA defines as the exclusive province of . . . CBAs." *Brown v. Illinois Central RR.*, 254 F.3d 654, 664 (7th Cir. 2001). But, while the arbitrator's interpretation plainly has the effect of eviscerating plaintiffs' discrimination claim, which was based on their flawed reading of Supplement U, it did not resolve the recast claim that plaintiffs now seek to pursue: that Supplement U, as interpreted by the arbitrator, violates the ADEA on its face. The arbitrator himself recognized that this question was outside the scope of his arbitral mandate (*see* AA's 56.1 St., Ex. 12 at 9 n.6). And, this very question is one we envisioned that plaintiffs "clearly" would seek to raise if the arbitrator rejected plaintiffs' interpretation of

11

Supplement U. *Miller*, 2004 WL 2203425, at *10. For this reason, we deny American's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

## 2.

Because the Court retains subject matter jurisdiction over the original claim as pled and litigated, namely, whether American discriminated against plaintiffs on the basis of age because it refused to offer them positions of comparable pay after the elimination of their FE positions, we must decide whether this claim survives summary judgment. We hold that it does not.

There is no dispute that the arbitrator's decision interpreted the term "normal. . . . retirement date" in Supplement U, like the term NRA in the Pension Plan, to mean as "age sixty-five." Nor is there any dispute that, as the arbitrator stated, under that interpretation, Supplement U did not provide plaintiffs with a contractual right to wage protection since they had already reached age sixty-five. The question on summary judgment is whether the undisputed fact of this interpretation eliminates the basis alleged by plaintiffs for their discrimination claim.

The Court finds that it does. "In the absence of such a contractual provision, an employer would have no duty [under the ADEA] to give another job to an employee validly disqualified from holding his present job." *Tice v. American Airlines, Inc.*, 288 F.3d 313, 315 (7th Cir. 2005). In this case, the action American took was triggered in the first instance by the elimination of the FE positions – an act that plaintiffs do not suggest was based on age, but, that all parties agree was based instead on advances in technology that led to the grounding of the 727 jets and elimination of the FE positions plaintiffs occupied. The ADEA did not, by its terms, require American to offer plaintiffs another job at any salary, much less at comparable pay. No doubt that is why plaintiffs cast their

12

case as one based on American having a contractual obligation to do so, an obligation American allegedly breached on account of plaintiffs' age.

But, now that it has been determined through arbitration that Supplement U did not grant plaintiffs the contractual right they asserted, their claim of discrimination for breach of that alleged right must fail. The Court therefore concludes that plaintiffs' original claim, as pled, does not survive summary judgment.

## B.

Understanding the frailty of the ADEA claim based on their rejected interpretation of Supplement U, plaintiffs attempt to reformulate their ADEA claim. Now, plaintiffs say, Supplement U as interpreted by the arbitrator violates the ADEA on its face because Supplement U impermissibly grants rights to those who have not yet reached the age of sixty-five that it denies to those who have reached the age of sixty-five. American argues that this recast claim is procedurally barred for three reasons: (1) plaintiffs failed to exhaust the ADEA's administrative requirements; (2) plaintiffs' new claim falls outside the scope of their EEOC charges; and (3) plaintiffs' new claim is untimely. For the reasons discussed below, we find that plaintiffs' new claim would fall outside the scope of the charge, so we do not reach the question of mootness and futility given this ruling.

## 1.

Plaintiffs claim that Supplement U, on its face, violates the ADEA and discriminates against them based on age because it *denies* them the benefits they seek based on their age (Pls.' Mem. at 9). In other words, the plaintiffs now argue that Supplement U, by its terms and on its face, discriminates in violation of the ADEA because it draws a line between those who are under sixty-five and those who are over sixty-five. We note, as does defendant, that this is the complete inverse

13

of the argument plaintiffs advanced throughout this litigation, namely, that Supplement U required American to comparably pay them and provide new positions (AA's Mem. at 9).

American argues that this claim is beyond the scope of the administrative charges filed in the EEOC, and thus fails to satisfy the exhaustion requirements of the ADEA (AA's Mem. at 8-11). We agree that the claim falls outside the scope of the charges.

The ADEA requires that a plaintiff file an administrative charge before filing a civil action in federal court. *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996) (citing 29 U.S.C. § 626). The "scope of the charge" doctrine is intended to ensure that a complaint filed in district court encompass only those allegations within the predicate EEOC charge for the dual purposes of: (1) ensuring that the EEOC is able to investigate the allegations and, if possible, play a conciliatory role between the parties; and (2) ensure that the charged party receives full notice of the allegations within the charge so that it can properly defend and or negotiate the claims. *See Noreuil*, 96 F.3d at 258-59. Under the scope of the charge doctrine, civil actions alleging violations of the ADEA "are cognizable only if they are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* (quoting *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 544 (7th Cir. 1988)). "[C]laims are not like or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (original emphasis). Claims are "adequately related under the scope-of-the-charge doctrine where 'the factual relationship of the . . . charges . . . is so related and intertwined in time, people and substance that to ignore that relationship for a strict and technical application of

14

the rule would subvert the remedial purposes of the Act.'" *Noreuil*, 96 F.3d at 259 (quoting *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993)).

The plaintiffs' assertion that Supplement U, on its face and by its terms, discriminates against them on the basis of age, was not alleged in their EEOC Charges. In their Charges, both plaintiffs alleged that the Tripartite Agreement guaranteed them another position of comparable salary when their positions were eliminated. Plaintiff Miller alleged specifically: "I was not offered a position with a comparable salary as required by the Tri-Partite Agreement" (AA's 56.1 St., Ex. 6E). Plaintiff Royals alleged specifically: "I was not offered a position with a comparable salary as required by the Tri-Partite Agreement" (*Id.*).

Likewise, the Complaint does not allege that Supplement U violates the ADEA on its face. To the contrary, the complaint alleges that American "promised the Plaintiff[s] a position which provided equal compensation" (AA's 56.1 St. ¶ 24). The word "required" in the plaintiffs' EEOC charges is consistent with the word "promised" as used in their Complaint. In response to American's requests to admit, plaintiffs admitted that the allegations in their complaint were based on their EEOC allegations that the Tripartite Agreement "requires" American to provide them a "position of comparable salary" (AA's 56.1 St. ¶ 25). Thus, at all times throughout their EEOC proceedings and in this lawsuit, plaintiffs alleged that they were entitled to, "as required by" or "as guaranteed by" Supplement U of the Tripartite Agreement, a position of comparable salary/equal compensation when American grounded its three-seat craft and their positions were eliminated (AA's 56.1 St. ¶ 28).

Now that this claim has been torpedoed by the arbitrator's ruling, plaintiffs seek to salvage their discrimination claim by basing it on a new premise: that Supplement U, by its terms and on

15

its face, discriminatorily denied plaintiffs the same benefit (comparable position and pay) as those who are under age sixty-five. However, this claim of discrimination is not alleged in the Complaint, a point made clear by plaintiffs' responses to the requests to admit. A complaint that, as here, alleges that American discriminately denied plaintiffs a benefit they were contractually entitled to receive cannot be fairly read as impliedly embracing the opposite proposition: that Supplement U violates the ADEA because it does not contractually guarantee to plaintiffs a benefit it would extend to those younger than sixty-five years old. Perhaps plaintiffs could have asserted such a claim in the alternative – but they did not do so. Thus, in these circumstances, we conclude that the Complaint as it is now cast does not include a claim that Supplement U violates the ADEA on its face.

That might not be an insuperable bar to plaintiffs asserting that claim now, since amendments to pleadings under Federal Rule of Civil Procedure 15(a) are liberally granted. *Foman v. Davis*, 371 U.S. 178, 182 (1968)[3] But, an exception to that liberality exists where the proposed amendment would be futile. *Id.* And, here, we conclude that allowing plaintiffs to now assert a claim that Supplement U is facially discriminatory would be futile because that claim is not like or related to plaintiffs' EEOC Charges.

The EEOC Charges allege that Supplement U "required" or "guaranteed" that plaintiffs receive comparable-pay positions once they lost their FE positions. These are not words that would reasonably put American or the EEOC on notice that plaintiffs might alternatively argue that there was no requirement or guarantee in Supplement U, but rather the very opposite: a denial of that

---

[3]We note plaintiffs have not sought to amend the Complaint. Instead, plaintiffs argue that they are entitled to make a facial challenge to Supplement U based on the claim of age discrimination they have alleged. In essence, plaintiffs argue that the facial challenge to Supplement U is not a new claim, but merely a new theory offered to support their existing claims. We disagree. Plaintiffs' new allegation is so contrary to the claim it now alleges in the complaint (*e.g.*, it involves a completely different contract interpretation, and would implicate completely different liability discovery) that we cannot find it embedded within the current Complaint.

16

promise and guarantee to those who were over the age of sixty-five (NRA). There is no evidence that the EEOC or American construed the Charges in that fashion. Indeed, American's response to the EEOC Charges show that it did not: American responded to the allegations of discrimination in the Charges, and did not address the issue of whether Supplement U would violate the ADEA if it did not provide the salary protection guarantee that plaintiffs claimed.

The purpose of an EEOC Charge is to provide notice and opportunity to investigate and conciliate plaintiffs' claims. Plaintiffs' EEOC Charges did not provide notice of any claim that Supplement U violated the ADEA on its face; nor did it provide American with an opportunity to respond to such a claim or the EEOC with an opportunity to investigate and conciliate it.

As the case law makes clear, the "scope of the charge" doctrine seeks to strike a reasonable balance that does not unduly compromise the remedial purposes of the ADEA by applying the rule in an overly technical fashion against persons who often file EEOC Charges without aid of counsel, but does not allow a plaintiff to assert claims in litigation that stray so far from the charge that the important goals of notice, investigation and conciliation are disserved. In this case, striking this balance leads us to conclude that plaintiffs' attempt to assert that Supplement U is facially discriminatory is not like or related to their EEOC Charges, and thus is not properly a part of this case.

## C.

We now turn to the merits of plaintiffs' new Supplement U claim. We do so to further explain why it would be futile to allow plaintiffs to amend the complaint to include that claim (if, as we have held, it is not currently in the case) and, in any event, would not survive summary judgment (if, as plaintiffs argue, it already is a part of the case).

17

Plaintiffs argue that Supplement U, on its face, makes an age-based distinction which, when applied to plaintiffs, violates the ADEA by denying them the benefits promised under Supplement U to persons under the age of sixty-five. However, we find that the undisputed material facts undermine this claim of discrimination.

*Hazen Paper v. Biggins*, 507 U.S. 604 (1993) makes clear that employment decisions made based on age-correlated factors that are not discriminatory, such as pension vesting, do not violate the ADEA. In *Hazen Paper*, the Supreme Court was asked to decide whether an employer violated the ADEA when it terminated an employee shortly before his pension benefits vested. The Supreme Court held that it did not because the ADEA does not protect an employee against terminations (or any other adverse employment action) related to pension vesting or any other business purpose. The Supreme Court held that simply because pension vesting, as a motivation, was *correlated* with age, did not mean that the decision to terminate was *motivated* by age. In other words, "proof of discriminatory motive is critical" in an ADEA action, and decisions based on factors other than age which may be correlated or associated with age are not unlawful. *Id.* at 611. *See also EEOC v. Francis W. Parker Sch.,* 41 F.3d 1073 (7th Cir. 1994) (upheld decision finding that school did not violate ADEA when it refused to hire more experienced applicant over less experienced applicant, despite the correlation between age and experience, because decision was based on school salary system which would have required school to pay more for experienced person).

In paragraph 12 of American's Rule 56.1 Statement of Material, Undisputed Facts, American asserts as undisputed the following statement:

. . .

> The parties drafted [Supplement U], in 1983 to ensure that if three-seat craft were eliminated, professional Flight Engineers would continue to receive the same rate of pay (in whatever alternative job they held) until they reached Normal Retirement Age so that their Pension would be based on the highest salary earned as a Flight Engineer . . . .

(AA's 56.1 St. ¶ 12 (citations omitted)).

American thus states, as a factual matter, that Supplement U was drafted and intended to ensure that Flight Engineers were able to obtain their full pensions at the highest earned salary prior to pension vesting, which occurred at the "Normal Retirement Age." American contends, therefore, that the distinction drawn between Normal Retirement Age persons and those who had not yet reached NRA was based on a pension vesting motivation and thus under *Hazen Paper* does not violate the ADEA (AA's Reply at 7-8).

In their Local Rule 56.1(b)(3)(C) written response, plaintiffs said they "neither admit nor deny" American's fact statement. Plaintiffs' failure to affirmatively deny paragraph 12 and to offer evidence to support such a denial constitutes an admission based on the plain language of Local Rule 56.1(b)(3)(C), which states that any statements of fact that the non-moving party fails to controvert will be deemed admitted. Further, at oral argument when the Court advised plaintiffs' counsel that "in [its] judgment [the response] neither admit nor deny admits" (12/06/06 Tr., 32-35), plaintiffs' counsel maintained the position that it could neither admit nor deny American's statement. When pressed to offer an explanation for this failure to admit or deny, plaintiffs' counsel stated that he had no basis upon which to deny it because there had been no discovery in the case regarding American's motivation for drafting Supplement U to link the promise of comparable pay to "Normal Retirement Age." That response underscores both the point that plaintiffs' current contention regarding

19

Supplement U was never part of the case and the failure of plaintiffs to create a triable issue on that contention even if it was part of the case. *Caisse Nationale de Credit Agricole v. CBI Indus, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).[4]

There is also precedent for the conclusion that plaintiffs' non-response is an admission. In the context of pleadings such as answers to a complaint or answers to interrogatories and requests to admit, the phrase "neither admit nor deny" cannot be asserted without being deemed an admission unless the party asserting the lack of knowledge carefully explains the basis for the lack of knowledge. *See* 8A Fed. Prac. & Proc. Civ.2d § 2261. And, more often than not, the assertion that is not admitted or denied will be admitted by a court. *See, e.g., Becker v. Warren Tp. High School Dist. No. 121*, No. 93 C 5658, 1993 WL 434087, * 1 (N.D. Ill. Oct. 21, 1993) (Shadur, J.) (admitting complaint's allegations because Fed.R.Civ.P. 8(b) does not permit a party to answer with the phrase "neither admits nor denies"). *See also Reed v. Gardner*, 986 F.2d 1122, 1128 (7th Cir. 1993)(where key fact neither admitted nor denied by plaintiff because fact not in record, court deemed fact admitted based on failure to controvert fact; Judge Posner called deemed admission an "inferred" rather than "explicit" admission).

Here, we have similar facts to those in *Reed*. At oral argument, this Court notified plaintiffs' counsel that it deemed the response "neither admit nor deny" to defendant's paragraph 12 in the fact statements to be an admission. The Court explained why it found this to be the case, and it offered plaintiff an opportunity to deny the factual assertion. Plaintiffs' counsel could not deny paragraph 12. While the admission here is one that is "inferred" rather than "explicit" – as in *Reed* – plaintiffs,

---

[4]We note that plaintiffs never requested limited discovery for the purpose of answering or responding to this factual assertion and, as we advised plaintiffs' counsel, it is too late now to do so (12/06/06 Tr., at 34).

20

although non-moving parties, bear the burden of proof on the merits of their claim. And, thus, they may not rest on the pleadings (or on their non-admission/non-denial, but must instead show that there is a genuine issue of material fact. *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir. 1993)). *See also* N.D. Ill. Local Rule 56.1(b)(3)(C). The plaintiffs have failed to do so here. Thus, we deem as admitted paragraph 12 of American's Rule 56.1 Statement.

That admission brings the case to a close. Even if plaintiffs could assert their new claim, it would fail ultimately on the merits, and summary judgment would be entered based on the admission to paragraph 12 and the holding in *Hazen Paper* case.

## CONCLUSION

It is therefore ordered that the Clerk of the Court deny defendant's motion to dismiss (doc. # 48-1) and grant its motion for summary judgment (doc. # 48-2), entering summary judgment on plaintiffs' Complaint in defendant's favor. This case is terminated.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

Dated: **February** 16, **2007**

21